**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

DANIEL SUHR,

        Plaintiff,

   v.

                                  Civil Action No. 2:23-CV-01697

DEAN R. DIETRICH, et al.,

        Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

    I.     The State Bar of Wisconsin ................................................................................ 2

    II.    Plaintiff's Complaint ........................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.     Any Facial Challenge to the Constitutionality of the state Bar is Barred By *Keller* and Its Progeny. ......................................................................................... 7

    II.    The Eleventh Amendment Requires Dismissal of Much of this Lawsuit. ............. 9

        A.    The Eleventh Amendment requires dismissal of all claims against Billings, Hickey, and Cardamone because their official duties are not at issue here. ................................................................................... 9

        B.    The Eleventh Amendment bars Plaintiff's claims for retrospective relief in their entirety. ............................................................................. 10

    III.   Plaintiff's Freedom of Association Claim Fails as a Matter of Law. .................. 11

    IV.   Plaintiff's As-Applied Challenges to the Constitutionality of the Bar Fail As A Matter of Law. ......................................................................................... 14

        A.    The statute of limitations bars challenges to the Bar's activities occurring before December 19, 2020. ....................................................... 15

        B.    *Keller* forecloses freedom of speech challenges to the Bar's activities occurring after the Bar's most recent available audit. ............... 16

        C.    *Keller* forecloses freedom of speech challenges to the State Bar's activities funded by voluntary dues or not funded by dues at all. ............. 19

        D.    The alleged activities of the State Bar that are funded by mandatory dues are nevertheless germane from the face of the AC ......... 21

            1.    Diversity programs ........................................................................ 21

            2.    Wisconsin Lawyer Articles ........................................................... 26

        3.     Statements Regarding Racial and Social Justice .......................... 27

        4.     Wisconsin Lawyer Assistance Program........................................ 28

  V.    The State Bar's Dues Reduction Procedures Have Been Approved By Multiple Courts. ................................................................................................... 29

CONCLUSION.................................................................................................................... 29

**TABLE OF AUTHORITIES**

## CASES

*Air Line Pilots Ass'n v. Miller*, 523 U.S. 866 (1998) ................................................................. 14

*Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620 (5th Cir. 2023) .................................... 13, 25, 26

*Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292
   (1986) ........................................................................................................... 15, 17, 18, 19

*Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (7th Cir. 1993) ................................................ passim

*Crowe v. Oregon State Bar*, 142 S. Ct. 79 (2021) .......................................................................... 9

*Crowe v. Oregon State Bar*, Case No. 3:18-cv-02139-JR, 2023 WL 1991529
   (D. Or. Feb. 14, 2023) .............................................................................................. 28

*Edelman v. Jordan*, 415 U.S. 651 (1974) ................................................................................. 9, 11

*Ex Parte Young*, 209 U.S. 123 (1908) ........................................................................... 9, 10, 11, 12

*File v. Hickey*, 143 S. Ct. 745 (2023) ............................................................................................. 8

*File v. Martin*, 33 F.4th 385 (7th Cir. 2022) ............................................................... 6, 8, 12, 29

*Firth v. McDonald*, 142 S. Ct. 1442 (2022) ................................................................................... 9

*Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459 (1945) ............................................ 11

*Frances J. v. Wright*, 19 F.3d 337 (7th Cir. 1994) ...................................................................... 10

*Gruber v. Oregon State Bar*, 142 S. Ct. 78 (2021) ........................................................................ 9

*Grutter v. Bollinger*, 539 U.S. 306 (2003) .................................................................................. 23

*Hemberger v. Bitzer*, 574 N.W.2d 656 (Wis. 1998) .................................................................... 16

*In re Amend. of State Bar Rules*: SCR 10.03(5), slip op. (Wis. Jan. 21, 1986) ............................ 6

*In re Amend. of Sup. Ct. Rules*: *10.03(5)(b) – State Bar Membership Dues Reduction*,
   174 Wis. 2d xiii (1993) .............................................................................................. 6

*In re Discontinuation of the State Bar of Wis. as an Integrated Bar*, 286 N.W.2d 601
   (Wis. 1980) ................................................................................................................. 6

*In re Integration of the Bar*, 25 N.W.2d 500 (Wis. 1946) ............................................................ 6

*In re Integration of the Bar*, 77 N.W.2d 602 (Wis. 1956) ............................................................ 6

*In re Integration of the Bar*, 93 N.W.2d 601 (Wis. 1958) ............................................................. 6

*In re Petition for a Voluntary Bar*, No. 11-01 (Wis. July 6, 2011) ................................................ 6

*In re Petition to Amend SCR 10.03(5)(b)1*, No. 09-08 (Wis. Nov. 17, 2010) ................................ 6

*In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e) and to Amend SCR 10.03(6)*, No. 17-04, slip op. (Wis. Apr. 12, 2018) ......................................... 6

*In re Petition to Review Change in State Bar Bylaws*, No. 11-05, slip op. (Wis. Oct. 7, 2011) ............................................................................................................ 6

*In re Petition to Review State Bar Bylaw Amends.*, 407 N.W.2d 923 (Wis. 1987) ....................... 6

*In re Reg. of the Bar of Wis.*, 81 Wis.2d xxxv (1978) .................................................................... 6

*In re State Bar of Wis.: Membership*, 485 N.W.2d 225 (Wis. 1992) ............................................. 3

*In re State Bar of Wisc.: Membership*, 485 N.W.2d 225 (Wis. 1992) ........................................... 6

*Integration of Bar Case*, 11 N.W.2d 604 (Wis. 1943) .................................................................... 6

*Jarchow v. State Bar of Wis.*, No. 19-3444, 2019 WL 8953257 (7th Cir. Dec. 23, 2019) .................................................................................................... 6, 8

*Keller v. State Bar of California*, 496 U.S. 1 (1990) ............................................................ passim

*Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010) ............................................... passim

*Knox v. Service Employees Inter. Union, Local 1000*, 567 U.S. 298 (2012) ................. 17, 18, 19

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002) ......................................... 11

*Lathrop v. Donohue*, 102 N.W.2d 404 (Wis. 1960) ....................................................................... 6

*Lathrop v. Donohue*, 367 U.S. 820 (1961) ......................................................................... passim

*Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988) ..................................................................... 6, 8

*Malone v. Corr. Corp of Am.*, 553 F.3d 540 (7th Cir. 2009) ....................................................... 16

*McDonald v. Firth*, 142 S. Ct. 1442 (2022) .................................................................................... 9

*McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021) ............................................................. passim

*McDonald v. Longley*, Case No. 1:19-cv-00219-LY, Dkt. 6-7 (W.D. Tex. Filed Mar. 25, 2019) ......................................................................................... 25

*Menominee Indian Tribe v. Thompson*, 161 F.3d 449 (7th Cir. 1998) ......................................... 19

iv

*Pomeroy v. Utah State Bar*, Case No. 2:21-cv-00219-TC-JCB, 2024 WL 1810229
(D. Utah Apr. 25, 2024) ............................................................................ 13, 26, 27

*Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008) ............................................ 20

*Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425 (1997) .................................. 11

*Report of Comm. to Review the State Bar*, 334 N.W.2d 544 (Wis. 1983) ................ 6

*Rosado v. Gonzalez*, 832 F.3d 714 (7th Cir. 2016) ............................................ 16

*Schell v. Darby*, 142 S. Ct. 1440 (2022) ............................................................ 9

*Seminole Tribe v. Fla. Dept. of Revenue*, 750 F.3d 1238 (11th Cir. 2014) .............. 11

*State ex rel. Armstrong v. Bd. of Governors*, 273 N.W.2d 356 (Wis. 1979) .............. 6

*Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181
(2023) ................................................................................................ 22, 26

*Taylor v. Heath*, 142 S. Ct. 1441 (2022) ............................................................ 9

*Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996) .................................. passim

*Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989) .................................... 11

*Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381 (1998) ........................................ 10

**STATUTES**

15 U.S.C. § 1983 ...................................................................................... 7

Wis. Stat. § 893.53 .................................................................................... 16

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 15

SCR 10.01 .......................................................................................... 2, 3

SCR 10.02 .......................................................................................... 2, 3

SCR 10.03 .......................................................................... 3, 4, 5, 8, 17, 19

SCR 10.04 ............................................................................................ 10

SCR 21.03 .............................................................................................. 3

SCR 21.06 .............................................................................................. 3

v

SCR 21.08 ............................................................................................................................ 3

SCR 22.10 ............................................................................................................................ 3

SCR 22.23 ............................................................................................................................ 3

SCR 22.30 ............................................................................................................................ 3

SCR Ch. 10, App'x, State Bar Bylaws, art. I, § 5 ............................................................. 4, 5

SRC Ch. 10, App'x, State Bar Bylaws art. I, § 2 ................................................................ 17

Defendants Dean R. Dietrich, Ryan Billings, Margaret Wrenn Hickey, Anna Frances Coyer Munoz, Deanne M. Koll, Joseph M. Cardamone III, and Larry Martin ("Defendants"), through undersigned counsel, submit the following Brief in support of the Motion to Dismiss Plaintiff Daniel Suhr's Verified Amended Complaint ("AC").

## INTRODUCTION

Plaintiff's AC challenges, on First and Fourteenth Amendment grounds, the requirement that he be a member of and pay dues to the State Bar of Wisconsin ("State Bar"). Plaintiff asserts that, by requiring membership in the State Bar, which engages in any activities that he alleges are not germane to the constitutional purposes of an integrated bar approved in *Keller v. State Bar of California*, 496 U.S. 1 (1990), Defendants violate his right to freedom of association. This theory is not supported by binding Seventh Circuit and Supreme Court law, and Plaintiff's freedom of association claim fails on its face.

Plaintiff further asserts that Defendants have violated his right to freedom of speech by using his mandatory dues to fund non-germane activities and by failing to maintain procedures sufficient to ensure that mandatory dues are not used for non-germane activities. Many of such activities occurred outside the statute of limitations, were not funded with mandatory dues or are otherwise not properly before this Court, and of those that remain, Plaintiff can support his claims only by selectively quoting State Bar publications and other documents out of context in an attempt to create the impression of rampant racial and gender discrimination within the State Bar. Reading the State Bar's statements in full and in their original context shows that nothing could be farther from the truth. Indeed, Plaintiff fails to identify a single, actionable instance of non-germane activity by the State Bar. The fact that Plaintiff disagrees with how the State Bar chooses to pursue its constitutional purposes does not render those activities non-germane. And,

1

as the analysis below illustrates, the dues reduction procedures which Plaintiff now seeks to undermine have been carefully crafted and diligently applied to preserve his constitutional rights and repeatedly approved by reviewing courts.

Because Plaintiff cannot show that the State Bar has violated his rights to freedom of expression or freedom of speech, Plaintiff's claims must be dismissed.

## **BACKGROUND**

## I. THE STATE BAR OF WISCONSIN

The State Bar is an "association" "of persons licensed to practice law in [Wisconsin]." Supreme Court Rule ("SCR") 10.01(1).[1] The State Bar was created by the Wisconsin Supreme Court as an "exercise of the court's inherent authority over members of the legal profession as officers of the court." SCR 10.02(1). This exercise is an "exertion[ ] of the State's law-making power." *Lathrop v. Donohue*, 367 U.S. 820, 824–25 (1961). The Wisconsin Supreme Court created the State Bar to "promote the public interest by maintaining high standards of conduct in the legal profession and by aiding in the efficient administration of justice." SCR 10.01(2). To further those purposes, the State Bar is charged by the Wisconsin Supreme Court to:

> Aid the courts in carrying on and improving the administration of justice; to foster and maintain on the part of those engaged in the practice of law high ideals of integrity, learning, competence and public service and high standards of conduct; to safeguard the proper professional interests of the members of the bar; to encourage the formation and activities of local bar associations; to conduct a program of continuing legal education; to assist or support legal education programs at the preadmission level; to provide a forum for the discussion of subjects pertaining to the practice of law, the science of jurisprudence and law reform and the relations of the bar to the public and to publish information relating thereto; to carry on a continuing program of legal research in the technical fields of substantive law, practice and procedure and make reports and recommendations thereon within legally permissible limits; to promote innovation, development and improvement of means to deliver legal services to the people of Wisconsin; to the

---

[1] Full text versions of the Wisconsin Supreme Court Rules and State Bar By-Laws are available at: https://www.wicourts.gov/supreme/sc_rules.jsp.

2

end that the public responsibility of the legal profession may be more effectively discharged.

*Id.* To advance these purposes, the Supreme Court Rules "permit the State Bar to engage in and fund 'any activity that is reasonably intended' to further the State Bar's purposes." SCR 10.03(5)(b).

"[M]embership" in the State Bar is "a condition precedent to the right to practice law in Wisconsin." SCR 10.01(1). Therefore, the Wisconsin Supreme Court requires "[e]very person who becomes licensed to practice law in [Wisconsin]" to "enroll in the state bar by registering." SCR 10.03(2). All active State Bar members—that is, those members authorized to practice law in Wisconsin, SCR 10.03(4)—must pay "annual membership dues," which in turn fund, *inter alia*, essential functions of the State Bar, including its numerous functions in support of the state's attorney regulatory system. *See, e.g.,* SCR 21.03, 21.06, 21.08, 22.10, 22.23, 22.30; *see also In re State Bar of Wis.: Membership*, 485 N.W.2d 225, 228 (Wis. 1992) (Bablitch, J., concurring); Memorandum of Court Commissioner, Rule Petition 11-04, Petition for Voluntary Bar at 22 (Oct. 25, 2011) at https://www.wicourts.gov/supreme/docs/1104commissionermemo.pdf. Failure to pay required dues can result in a member being "suspended" from the practice of law. SCR 10.03(6).

While, as noted above, the Wisconsin Supreme Court has generally provided that the State Bar may "engage in and fund any activity that is reasonably intended for the purposes of the association" as defined in SCR 10.02(2), it has also clearly stated that "[t]he State Bar may *not* use the compulsory dues of any member who objects ... for activities that are not necessarily or reasonably related to the purposes of regulating the legal profession or improving the quality of legal services." SCR 10.03(5)(b)(1) (emphasis added). This is consistent with the standard set by the Supreme Court in *Keller.* 496 U.S. at 14 ("The State Bar may therefore constitutionally fund activities germane to [regulating the legal profession and improving the quality of legal services]

3

out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity."); *see also id.* at 15 (quoting *Lathrop*, 367 U.S. at 843) ("[T]he guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or 'improving the quality of the legal service available to the people of the State.'"). Activities not reasonably intended to fulfill those purposes "may be funded only with voluntary dues, user fees or other sources of revenue." *Id.*

The State Bar has gone one step further than required by SCR 10.03 and *Keller*, however, and includes in the category of activities that may not be funded by mandatory dues "*all* direct lobbying activity on policy matters before the Wisconsin State Legislature or the United States Congress ... , even lobbying activity deemed germane to regulating the legal profession and improving the quality of legal services." State Bar of Wisconsin, *Maintaining Your Membership* (2022), https://www.wisbar.org/formembers/membershipandbenefits/Pages/Maintaining-Your-Membership.aspx (under "State Bar of Wisconsin Dues Reduction and Arbitration Process (Keller Dues Reduction)" tab).

To effectuate the standard set by the Supreme Court in *Keller* and incorporated in SCR 10.03, each year, along with an annual dues statement, the State Bar sends to each member a "written notice of the activities that can be supported by compulsory dues and the activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2; *see generally* SCR Ch. 10, App'x, State Bar Bylaws, art. I, § 5. This notice, often referred to as the "*Keller* Dues Reduction Notice," is sent "[p]rior to the beginning of each fiscal year" (SCR 10.03(5)(b)2) and is based on data from the most recent fiscal year for which there is an audit report available (*see, e.g.*, Dkt. 1-1 at 30–31, ("Fiscal Year 2024 *Keller* Dues Reduction Notice"); *Keller*, 496 U.S. at 16–17). The notice

4

"indicate[s] the cost of each activity, including all appropriate indirect expense[s], and the amount of dues to be devoted to each activity" (SCR 10.03(5)(b)2). The State Bar then voluntarily rounds up from a "strict calculation" (*see e.g.* Fiscal Year 2024 *Keller* Dues Reduction Notice). The Notice provides each member the opportunity to "withhold" from their "annual dues statement" "the pro rata portion of dues budgeted for [the] activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2. This pro rata dues reduction is often referred to as the "*Keller* Dues Reduction."

The Wisconsin Supreme Court's Rules also provide a procedure for a member who "contends that the state bar incorrectly set the amount of dues that can be withheld" to challenge the amount of the *Keller* Dues Reduction through a timely demand for arbitration. SCR 10.03(5)(b)3. The State Bar must then "promptly submit the matter to arbitration before an impartial arbitrator." SCR 10.03(5)(b)4. If the arbitrator concludes that an increased pro rata dues reduction is required, "the state bar shall offer such increased pro rata reduction to members first admitted to the state bar during that fiscal year and after the date of the arbitrator's decision." SCR 10.03(5)(b)5. "The costs of arbitration shall be paid by the state bar." SCR 10.03(5)(b)4. During the pendency of the challenge, the objecting member(s) pay no dues to the State Bar. SCR 10, App'x, Bylaws art. I, § 5(B).

The constitutionality of the State Bar's integrated structure has been affirmed by the U.S. Supreme Court,[2] the Seventh Circuit,[3] and the Wisconsin Supreme Court[4] against numerous challenges over the past 75 years.

---

[2] *Lathrop v. Donohue*, 367 U.S. 820 (1961).

[3] *File v. Martin*, 33 F.4th 385 (7th Cir. 2022); *Jarchow v. State Bar of Wis.*, No. 19-3444, 2019 WL 8953672 (7th Cir. Dec. 23, 2019); *Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010); *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996); *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (7th Cir. 1993); *Levine v. Heffernan*, 864 F.2d 457 (7th Cir. 1988).

[4] *Integration of Bar Case*, 11 N.W.2d 604 (Wis. 1943); *In re Integration of the Bar*, 25 N.W.2d 500 (Wis. 1946); *In re Integration of the Bar*, 77 N.W.2d 602 (Wis. 1956); *In re Integration of the Bar*, 93 N.W.2d

## II. PLAINTIFF'S COMPLAINT

On December 19, 2023, Plaintiff filed this action against officers of the State Bar. (AC ¶¶ 16–23.) Plaintiff is "a constitutional conservative who has dedicated his legal practice to public-interest litigation" and "has been a member of the Bar and paid it dues yearly since 2008." (*Id.* ¶ 15.) "Plaintiff takes a *Keller* deduction yearly." *Id.*

The AC identifies more than 30 separate activities of the State Bar, a division of the State Bar, or Section of the State Bar which he alleges are funded with mandatory dues and are not germane to the constitutional purposes of the State Bar. These include statements regarding various State Bar programs aimed at diversifying the legal profession (AC ¶¶ 26–51), Black Lives Matter and other issues of public importance (AC ¶¶ 128–140), advice on the business of running a legal practice (AC ¶ 145), the Wisconsin Lawyer Assistance Program (AC ¶¶ 146–148), advertisements on the State Bar website (AC ¶¶ 149–155), and statements regarding the benefits of Bar membership (AC ¶¶ 156–57). Plaintiff also complains that the State Bar's *Keller* dues reduction procedures are constitutionally inadequate. (AC ¶¶ 164–75.)

Based on these allegations, the Complaint asserts two counts. The First Claim for Relief asserts that the State Bar violated Plaintiff's First Amendment rights by "forcing [him] to subsidize activities that are not 'germane' to a constitutionally permissible justification for

---

601 (Wis. 1958); *Lathrop v. Donohue*, 102 N.W.2d 404 (Wis. 1960); *In re Reg. of the Bar of Wis.*, 81 Wis.2d xxxv (1978); *State ex rel. Armstrong v. Bd. of Governors*, 273 N.W.2d 356 (Wis. 1979); *In re Discontinuation of the State Bar of Wis. as an Integrated Bar*, 286 N.W.2d 601 (Wis. 1980); *Report of Comm. to Review the State Bar*, 334 N.W.2d 544 (Wis. 1983); *In re Amend. of State Bar Rules*: SCR 10.03(5), slip op. (Wis. Jan. 21, 1986); *In re Petition to Review State Bar Bylaw Amends.*, 407 N.W.2d 923 (Wis. 1987); *In re State Bar of Wisc.: Membership*, 485 N.W.2d 225 (Wis. 1992); *In re Amend. of Sup. Ct. Rules*: 10.03(5)(b) – *State Bar Membership Dues Reduction*, 174 Wis. 2d xiii (1993); *In re Petition to Amend SCR 10.03(5)(b)1*, No. 09-08 (Wis. Nov. 17, 2010); *In re Petition for a Voluntary Bar*, No. 11-01 (Wis. July 6, 2011); *In re Petition to Review Change in State Bar Bylaws*, No. 11-05, slip op. (Wis. Oct. 7, 2011); *In re Petition to Repeal and Replace SCR 10.03(5)(b) with SCR 10.03(5)(b)-(e) and to Amend SCR 10.03(6)*, No. 17-04, slip op. (Wis. Apr. 12, 2018).

6

mandatory membership in the Bar" and by failing to provide adequate procedures to ensure that mandatory dues are not used to fund non-germane activities. (AC ¶¶ 176–212.) The Second Claim for Relief asserts that the State Bar violated Plaintiff's First Amendment rights by compelling him to associate with the Bar's allegedly non-germane activities, regardless of how those activities are funded. (AC ¶¶ 213–21.) As a remedy, the Complaint seeks declaratory and injunctive relief, damages pursuant to 15 U.S.C. § 1983, and attorneys' fees and costs. *Id.* p. 42–43.

## ARGUMENT

## I.     ANY FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF THE STATE BAR IS BARRED BY *KELLER* AND ITS PROGENY.

Plaintiff appears to disclaim any facial challenge to the constitutionality of the State Bar. (*See* AC ¶ 198 n.60.) Nonetheless, to the extent Plaintiff does attempt to raise such a challenge, his claim is plainly foreclosed by *Keller* and its progeny, including recent Seventh Circuit precedent. In *Keller*, the Supreme Court upheld California's "integrated bar"—which required both "membership" and "dues" "as a condition of practicing law" in that State—against First Amendment free-speech and free-association challenges. 496 U.S. at 1, 4–5 ("lawyers admitted to practice in the State may be required to join and pay dues to the State Bar").  The Court held that "the compelled association and integrated bar are justified by" two constitutionally relevant purposes: "the State's interest in regulating the legal profession and improving the quality of legal services." *Id.* at 13–14.  So, while requiring "bar members" to "join the group . . . and to provide financial support for group speech . . . implicate[s] the First Amendment," the requirements are nevertheless "permitted under the First Amendment" because they serve these two "legitimate governmental purposes for the benefit of all members." *Kingstad*, 622 F.3d at 712–13.  The Supreme Court has permitted this type of "mandatory association[ ]," *id.* at 713, for

7

over 50 years, *Lathrop v. Donohue*, 367 U.S. 820, 843 (1961) (upholding mandatory membership in the State Bar of Wisconsin against a First Amendment Challenge).

*Keller*'s holding that a state law "may," consistent with the First Amendment, "require[ ]" "lawyers admitted to practice in the State" to "join and pay dues to the State Bar" dooms facial challenges to Wisconsin's integrated bar. Wisconsin Supreme Court Rule 10.03 tracks *Keller* exactly: it requires "[e]very person who becomes licensed to practice law in [Wisconsin]" to "enroll in the state bar by registering" and to pay "annual membership dues." SCR 10.03(2), (5)(a); *compare Keller*, 496 U.S. at 4 ("lawyers admitted to practice in the State may be required to join and pay dues to the State Bar"). This is why the Seventh Circuit has repeatedly upheld Wisconsin's mandatory State Bar against First Amendment challenges and the Supreme Court has, within the past four years, twice rejected a request that it reconsider its decision in *Keller* in challenges to the State Bar. *File v. Martin*, 33 F.4th 385 (7th Cir. 2022), *cert. denied sub nom. File v. Hickey*, 143 S. Ct. 745 (2023); *Jarchow v. State Bar of Wisconsin*, No. 19-3444, 2019 WL 8953257 (7th Cir. Dec. 23, 2019), *cert. denied* 140 S. Ct. 1720 (2020); *Kingstad*, 622 F.3d 708; *Thiel v. State Bar of Wis.*, 94 F.3d 399 (7th Cir. 1996); *Crosetto v. State Bar of Wis.*, 12 F.3d 1396 (1993); *Levine v. Heffernan*, 864 F.2d 457, 462–63 (7th Cir. 1988); *see generally Levine*, 864 F.2d at 459 ("lower court must follow [ ] relevant [higher-court] decision[s]"). *See also Taylor v. Heath*, 142 S. Ct. 1441 (2022); *Firth v. McDonald*, 142 S. Ct. 1442 (2022); *McDonald v. Firth*, 142 S. Ct. 1442 (2022); *Schell v. Darby*, 142 S. Ct. 1440 (2022); *Gruber v. Oregon State Bar*, 142 S. Ct. 78 (2021); *Crowe v. Oregon State Bar*, 142 S. Ct. 79 (2021) (all rejecting facial challenges to other mandatory bars). Accordingly, any facial challenge to the constitutionality of mandatory membership in the State Bar, or the payment of mandatory dues, must fail.

8

## II. THE ELEVENTH AMENDMENT REQUIRES DISMISSAL OF MUCH OF THIS LAWSUIT.

### A. The Eleventh Amendment requires dismissal of all claims against Billings, Hickey, and Cardamone because their official duties are not at issue here.

Plaintiff's claims against Billings, Hickey, and Cardamone are barred by the Eleventh Amendment. The Eleventh Amendment "bars suit" against "the state itself" and any "'arm' or 'alter ego' of the state." *Thiel*, 94 F.3d at 400–01, *overruled on other grounds by Kingstad*, 622 F.3d at 717 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *see also Crosetto*, 12 F.3d at 1400–03. In *Thiel*, the Seventh Circuit held that the State Bar enjoys "Eleventh Amendment immunity" as an arm of the State because "the Wisconsin Supreme Court exercises a great deal of control over the Bar," "[t]he Wisconsin Supreme Court has ultimate authority" to "adopt and amend" the Rules that "the Bar enforces," "the Bar's role is completely defined by the [Wisconsin Supreme] Court," and "the Bar acts as an agent of the [Wisconsin Supreme] Court." 94 F.3d at 402–03 (citations omitted) (also noting that "Wisconsin has not waived the Bar's sovereign immunity in federal court").

Notwithstanding the Eleventh Amendment, the doctrine of *Ex Parte Young* allows federal courts to adjudicate suits against "individual . . . state official[s]" named as defendants for "prospective injunctive relief" only. *See Thiel*, 94 F.3d at 403 (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). Under *Ex Parte Young*, individual state officials do not enjoy the State's sovereign immunity when they take "action[ ] contrary to the Constitution," *id.* (citations omitted), since "a state cannot authorize" such actions, *Frances J. v. Wright*, 19 F.3d 337, 342 (7th Cir. 1994), *abrogated on other grounds by Wis. Dept. of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). Therefore, a federal court may grant "injunctive relief" against the official to prevent "future" unconstitutional "conduct." *See id.* In order to benefit from the *Ex Parte Young* exception, however, a plaintiff must name as a defendant the state officer charged with carrying

9

out the "duties" that are allegedly unconstitutional. *See Ex Parte Young*, 209 U.S. at 160–61. Only that office-holder is "a proper party to [ ] suit." *Id.*

Here, the AC's claims against the President-Elect (Billings), the Immediate Past-President (Hickey), and the Chairperson of the Board of Governors (Cardamone) must be dismissed. The official duties of the President-Elect and the Immediate Past-President are to "be a member-at-large of the board of governors and the executive committee" and to "perform all other duties assigned to [him or her] by the president or board of governors." SCR 10.04(2)(b). The official duties of the Chairperson of the Board of Governors are to "be a member-at-large of the board of governors," to "be a member of the executive committee ex officio," and to "preside at all meetings of the board of governors." SCR 10.04(2)(c). None of these duties encompass responsibility for the actions that Plaintiff challenges as unconstitutional here: the collection of mandatory membership dues and the maintenance of the mandatory membership rolls. *See* AC ¶¶ 176–221. Accordingly, these officials are not proper defendants, *see Ex Parte Young*, 209 U.S. at 160–61, and so must be dismissed.

### B. The Eleventh Amendment bars Plaintiff's claims for retrospective relief in their entirety.

As noted immediately above, the doctrine of *Ex Parte Young* allows federal courts to adjudicate claims against "individual . . . state official[s]," despite the Eleventh Amendment, for "*prospective injunctive relief*" only. *Thiel*, 94 F.3d at 403 (citing *Ex Parte Young*, 209 U.S. at 159–60) (emphasis added). This doctrine does not allow claims for the "retroactive" recovery of an "amount of money" from either the State or a state official named in his or her official capacity. *Edelman v. Jordan*, 415 U.S. 651, 664–68, 675–77 (1974); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its

sovereign immunity from suit even though individual officials are nominal defendants" (citation omitted)); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 & n.10 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). While "a [Section] 1983 action may be instituted [against state officials in their official capacities], a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman*, 415 U.S. at 677.

Here, the claims for nominal, compensatory, and punitive damages, from Defendants named in their official capacities, is retroactive relief that takes the form of money damages. *See Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 622–23 (2002) (claim for a tax "refund" was barred by the Eleventh Amendment); *see also Seminole Tribe v. Fla. Dept. of Revenue*, 750 F.3d 1238, 1243–44 (11th Cir. 2014) (Eleventh Amendment barred suit for tax refund, even though plaintiff named the director of the state department of revenue); *see generally Edelman*, 415 U.S. at 668 (distinguishing between the "payment of state funds" "as a necessary consequence of compliance in the future with a substantive federal-question determination" and the payment of state funds as a "retroactive award of monetary relief"). Accordingly, these claims for retroactive relief fall outside the *Ex Parte Young* exception, are barred by the Eleventh Amendment, and must be dismissed.

## III. PLAINTIFF'S FREEDOM OF ASSOCIATION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's claim that mandatory membership in the State Bar violates his right to freedom of association when the State Bar engages in *any* non-germane activities also has no basis in

Seventh Circuit law and is inconsistent with existing precedents. In *File v. Martin*, File (notably represented by Plaintiff) argued that mandatory membership in the State Bar violated his right to freedom of association because mandatory membership did not serve a compelling state interest. Appellant's Brief, *File v. Martin*, No. 20-2387, Doc. 8 at 8–9 (7th Cir. 2020). The Seventh Circuit held that "File's claim is squarely foreclosed by the Supreme Court's decision in *Keller*, which held that the compelled association required by an integrated bar is 'justified by the State's interest in regulating the legal profession and improving the quality of legal services.'" *File v. Martin*, 33 F.4th at 391 (quoting *Keller*, 496 U.S. at 14). This statement is wholly inconsistent with the claim that it is unconstitutional to compel Plaintiff to associate with the State Bar if the State Bar engages in any non-germane activity. Indeed, the panel could not have rejected File's arguments so categorically if any non-germane activity could render the State Bar unconstitutional. Plaintiff's argument here is thus plainly contrary to the applicable Seventh Circuit precedents. *See also Keller*, 496 U.S. at 15 (non-germane activities of a mandatory bar "may be funded only with voluntary dues, user fees or other sources of revenue.")

Moreover, if engaging in any non-germane activity rendered a mandatory bar association unconstitutional, then the State Bar's *Keller* Dues Reduction procedures, consistently approved by the Seventh Circuit for decades, would be superfluous. The Supreme Court has long required mandatory bars to maintain dues reduction or refund procedures to ensure that members' mandatory dues are not used to fund non-germane activities. *See Keller*, 496 U.S. at 16–17. Indeed, the requirement for dues reduction procedures presupposes that a mandatory bar might engage in non-germane activities and provides a mechanism for ensuring that such activities do not violate an objector's constitutional rights. Similarly, the Supreme Court in *Lathrop* expressly noted that "the *bulk* of the State Bar activities" served the legitimate functions of the State Bar,

recognizing that some lesser portion of the State Bar's activities did not serve those functions, yet did not render mandatory membership in the State Bar unconstitutional. *Lathrop*, 367 U.S. at 839, 843.

The better standard for evaluating Plaintiff's freedom of association claim, and the one more consistent with Seventh Circuit and Supreme Court precedent, was that used by the Tenth Circuit in *Schell v. Chief Justice and Justices of Okla. Sup. Ct.*: whether the State Bar's non-germane activities are of such "quantity, substance, or prominence" as to support a freedom-of-association claim based on compelled membership in the State Bar. 11 F.4th at 1195 n.11. In applying this standard, the District of Utah recently looked to "1) the amount of non-germane conduct; 2) the substance of that conduct, including whether the conduct is political or ideological; and 3) the prominence of that conduct, including whether a disclaimer would prevent a reasonable person from attributing the conduct to the beliefs of an objecting member." *Pomeroy v. Utah State Bar*, Case No. 2:21-cv-00219-TC-JCB, 2024 WL 1810229, at *7 (D. Utah Apr. 25, 2024). Even the Fifth Circuit, despite ostensibly rejecting the idea of a *de minimis* level of non-germane activity in *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 636–37 (5th Cir. 2023), engaged in a more holistic analysis in *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021), rejecting the need to consider whether every single article or statement by the State Bar of Texas was germane. Thus, even the more stringent standards articulated by the Fifth Circuit favor some assessment of the amount, substance, and prominence of allegedly non-germane conduct.

Applying this standard, Plaintiff's freedom of association claim fails. As discussed in detail below, the AC fails to identify a single actionable instance of non-germane activity. Even if some of the State Bar activities Plaintiff challenges are found to be non-germane, Plaintiff fails

to plausibly allege that those activities are of such quantity, substance, and prominence that they rise to a level that violates his right to freedom of association. Plaintiff's only theory is that *any* instance of non-germane activity is a violation. This is not the law. Accordingly, Plaintiff's freedom of association claim fails.

## IV. PLAINTIFF'S AS-APPLIED CHALLENGES TO THE CONSTITUTIONALITY OF THE BAR FAIL AS A MATTER OF LAW.

*Keller* held that the State Bar may "constitutionally fund" with the "mandatory dues of all members" those activities that are "germane to" "regulating the legal profession and improving the quality of legal services." 496 U.S. at 13–14; *accord Kingstad*, 622 F.3d at 709. Any activity of the State Bar that is not germane to either of these two constitutional interests may not be funded with mandatory dues. *See Keller*, 496 U.S. at 14–16; *accord Kingstad*, 622 F.3d at 714–15, 718. The lack of germaneness of a particular mandatory-dues expenditure is accordingly an essential element to a member's as-applied First Amendment challenge to that expenditure. *See Keller*, 496 U.S. at 14–16; *accord Kingstad*, 622 F.3d at 714–15, 718.

An objecting member wishing to bring a germaneness challenge has the "burden" "to point to the expenditures" that he alleges the State Bar "improperly classified as germane." *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 877–78 (1998) (citations omitted).[5] What a member may not do is "file a generally phrased complaint, then sit back and require the [State Bar] to prove the germaneness of its expenditures without a clue as to which of its thousands of expenditures the objectors oppose." *Id.* at 878 (citations omitted). The objecting member must

---

[5] *Air Line Pilots* involved a challenge to the germaneness of a union's expenditure of mandatory dues, applying the procedures approved in *Chicago Teachers Union, Local No. 1, AFT, AFL-CIO v. Hudson*, 475 U.S. 292, 306–07 (1986). *See* 523 U.S. at 877–78. An integrated bar can similarly meet its constitutional obligation to permit challenges to its use of mandatory dues by following procedures satisfying the requirements approved in *Hudson*. *Keller*, 496 U.S. at 16–17.

meet his burden "with the degree of specificity appropriate at each stage of litigation the [ ] case reaches: motion to dismiss; motion for summary judgment; pretrial conference." *Id.* at 878.

Here, "at [this] stage of the litigation," Plaintiff has the burden to allege in the AC that specific State Bar expenditures were "improperly classified as germane." *Id.* at 877–78; *see Omnicare v. Laborers Dis. Council Construction Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (complaint must allege all essential elements); *accord Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568–70 (7th Cir. 2016). Only then must the State Bar demonstrate to the Court how those expenditures identified are in fact "germane to" "regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13–14; *accord Kingstad*, 622 F.3d at 709.

As explained below, Plaintiff's claims based on the activities identified in the AC are barred for one or more of the following reasons: (1) the statute of limitations has expired, (2) Plaintiff's claim is not ripe, (3) the activities were funded only with voluntary dues, and/or (4) the activities are germane.

## A. The statute of limitations bars challenges to the Bar's activities occurring before December 19, 2020.

When a claim is "indisputably time-barred" under the applicable statute of limitations, the Court must dismiss it under Rule 12(b)(6). *Rosado v. Gonzalez*, 832 F.3d 714, 716 (7th Cir. 2016) (citation omitted). Section 1983 of Title 42 of the United States Code, which provides the federal cause of action for Plaintiff's claims, *see* AC ¶¶ 176–221, does not possess its own statute of limitations. *See Malone v. Corr. Corp of Am.*, 553 F.3d 540, 542 (7th Cir. 2009). Therefore, the Court must look to state law to determine the applicable limitations period. *See id.* The governing state law in Wisconsin for this purpose is Wis. Stat. § 893.53, *Malone*, 553

15

F.3d at 542; *see also Hemberger v. Bitzer*, 574 N.W.2d 656, 660 (Wis. 1998), which establishes a three-year limit for the allegations in the AC.

Here, Plaintiff filed his Complaint on December 19, 2023, so activities that occurred before December 19, 2020 may not be challenged. These time-barred activities, are as follows:

- *Change Does Not Happen When We Are Comfortable or Complacent*, AC ¶ 130, n.28; dated June 2, 2020;

- X post regarding Black Lives Matter, AC ¶ 131, n. 29; dated June 17, 2020;

- *Racial Equity of Black Americans: It's Time to Step Up | A Statement*, AC ¶¶ 133, 135, n.30; dated June 17, 2020; and,

- X post regarding racial, social, and justice reform, AC ¶ 140, n.33 dated August 15, 2020.

Therefore, to the extent Plaintiff's claims rely upon these and any other activities occurring before December 19, 2020, they are "indisputably time-barred" and must be dismissed. *Rosado*, 832 F.3d at 716; *Schell*, 11 F.4th at 1191–92 (holding that claims based on *Oklahoma Bar Journal* articles published outside the statute of limitations were time-barred).

**B.** **Keller foreclosures freedom of speech challenges to the Bar's activities occurring after the Bar's most recent available audit.**

In addition to challenging State Bar activities that are too old, the AC challenges State Bar activities that are too new. *Keller* does not require the State Bar to conduct a germaneness analysis "*prior to* each" expenditure in order to meet its First Amendment obligation not to fund non-germane activities with mandatory dues. 496 U.S. at 16 (emphasis added). Rather, the State Bar complies with *Keller* by providing all members with an optional "*advance* reduction of dues," *Hudson*, 475 U.S. at 304 (emphasis added), calculated from "the breakdown [of germane and non-germane activities] in the most recent year" for which audited financial statements are available, *Knox v. Service Employees Inter. Union, Local 1000*, 567 U.S. 298, 317 n.7 (2012);

16

*see generally Keller*, 496 U.S. at 17 ("We believe an integrated bar could certainly meet its [First Amendment] obligation by adopting the sort of procedures described in *Hudson*."). Such advance reduction respects the First Amendment rights of State Bar members because it "assum[es]" that a State Bar's "allocation of funds for chargeable and nonchargeable purposes is not likely to vary greatly from one year to the next." *Knox*, 567 U.S. at 318.

Here, the State Bar's *Keller* Dues Reduction procedure, as defined by the Wisconsin Supreme Court's Rules, is an optional "advance reduction of dues" that meticulously follows the requirements of *Keller*, as the Seventh Circuit has held. *See Crosetto*, 12 F.3d at 1404–05. The State Bar sends a notice "[p]rior to the beginning of each fiscal year," detailing which "activities [ ] can be supported by compulsory dues and [which] activities [ ] cannot be supported by compulsory dues," SCR 10.03(5)(b)2, based on the data from the most recently audited fiscal year, *see, e.g.*, Fiscal Year 2024 *Keller* Dues Reduction Notice. It then provides each member with the opportunity to "withhold" from their "annual dues statement" "the pro rata portion of dues budgeted for [the] activities that cannot be supported by compulsory dues," including "all appropriate indirect expense[s]." SCR 10.03(5)(b)2.

Following this procedure, the State Bar has already sent its *Keller* Dues Reduction Notice for Fiscal Year 2025—which runs from July 1, 2024 to June 30, 2025—to all its members. *See* State Bar Bylaws art. I, § 2 (defining fiscal year). This most recent notice is based on State Bar activities from Fiscal Year 2023—which ran from July 1, 2022 to June 30, 2023—since this is "the most recent fiscal year for which there is an audit report" available. *See Fiscal Year 2024 Keller* Dues Reduction Notice, Dkt. 1-1 at 30; *cf. Keller*, 496 U.S. at 17; *Hudson*, 475 U.S. at 304; *Knox*, 567 U.S. at 318. Accordingly, the State Bar has not yet audited any of its activities occurring after June 30, 2023, for germaneness, which means it has not yet concluded which

17

activities from that date are fundable with mandatory dues. The following alleged activities described in the AC occurred after the most recent *Keller* Dues Reduction Notice from the State Bar:

- *Support the Center for Black Excellence and Culture*, InsideTrack, published Feb. 21, 2024; AC ¶ 113, n.22;

- Attorneys for Black Excellence Initiative, YouTube, posted Feb. 19, 2024; AC ¶ 117, n. 23;

- November 30, 2023 X post; AC ¶ 158, n. 51;

- November 28, 2023 X post; AC ¶ 158, n. 52;

- November 27, 2023 X post; AC ¶ 158, n. 53;

- November 24, 2023 X post; AC ¶ 158, n. 54;

- November 22, 2023 X post; AC ¶ 158, n. 55;

- October 31, 2023 X post; AC ¶ 158, n. 56;

- November 3, 2023 X post; AC ¶ 158, n.57;

- December 6, 2023 "liked" X post; AC ¶ 160, n. 58;

- December 6, 2023 "liked" X post; AC ¶ 161, n. 58;

- December 9, 2023 X post; AC ¶ 156, n. 49;

- *Do You Have a Multicultural Law Practice?*, Elder Law and Special Needs Blog, published August 15, 2023, AC ¶ 142, n. 34;

- *Qualified Immunity: A Dubious Doctrine and a 21st Century Wisconsin Solution*, Wisconsin Lawyer, published November 9, 2023; AC ¶ 145, n.35;

- *How to Measure Your Digital Marketing & Set Some Goals*, Wisconsin Lawyer, published November 9, 2023; AC ¶ 145, n. 37; and,

- *Get Your Name Out There: Showcase Your Legal Knowledge in Wisconsin Newspapers*, InsideTrack, published December 6, 2023; AC ¶ 157, n. 50.

Given that *Keller* does not impose a First Amendment duty to conduct a germaneness analysis for these activities at this time, *Keller*, 496 U.S. at 17; *Hudson*, 475 U.S. at 304; *Knox*, 567 U.S. at 318, Plaintiff's claim is not ripe and he has not stated a valid First Amendment challenge to these activities as a matter of law. Further, there is no reason to doubt that the State Bar will properly classify these activities in the future, given its meticulous and generous *Keller* Dues Reduction procedures. *See Crosetto*, 12 F.3d at 1404–05.

### C. *Keller* forecloses freedom of speech challenges to the State Bar's activities funded by voluntary dues or not funded by dues at all.

As explained by *Keller* and its progeny, and as discussed more fully above, "the First Amendment prohibits the State Bar from funding non-germane activities with compelled dues." *Kingstad*, 622 F.3d at 718; *Keller*, 496 U.S. at 13–14. Therefore, the First Amendment rights of objecting members extend only to challenging the State Bar's use of *mandatory* dues, not to the State Bar's use of *voluntary* dues or other sources of revenue. *See Keller*, 496 U.S. at 14; *accord Kingstad*, 622 F.3d at 718.

Here, the AC identifies a number of activities that were funded with voluntary dues or were not funded by dues at all.[6] The litigation section diversity scholarship (AC ¶ 126) and the Elder Law and Special Needs blog (AC ¶ 142, n.34) are both activities of Sections of the State Bar, which do not use mandatory dues. *See* SCR 10.05(4)(3)(4). The Wisconsin Lawyer article *Creating a More Diverse and Equitable Legal System* (*see* AC ¶ 136) was classified as non-

---

[6] The information for the source of funding for these activities comes in part from the State Bar's *Keller* Dues Reduction Notices, which are mailed to each member of the State Bar each year as directed by Wisconsin Supreme Court rules. SCR 10.03(5)(b)2; This Court may consider these Notices now at the motion-to-dismiss stage for two reasons: First, the AC refers to the *Keller* Dues Reduction Notice for Fiscal Year 2024. (FAC ¶ 169); *see Menominee Indian Tribe v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998). Second, the Notices are judicially noticeable as part of the public record. *See Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008).

chargeable and included in the *Keller* Dues Reduction. Similarly, all lobbying activities (AC ¶ 162) and the costs of social media posts have been classified as non-chargeable and are therefore included in the *Keller* Dues Reduction. (*See Keller* Dues Reduction Notice for Fiscal Year 2024.) While Plaintiff's claims relating to social media posts (AC ¶¶ 158, 160 n.58, 161 n.58) are not ripe because the posts he objects to occurred after the most recent audit, the *Keller* Dues Reduction Notice for Fiscal Year 2025 states that all social media activity is classified as non-chargeable. (*See Keller* Dues Reduction Notice for Fiscal Year 2025, https://www.wisbar.org/formembers/membershipandbenefits/Documents/Keller%20Dues%20Insert.pdf.) There is no reason to think, and Plaintiff does not allege, that the State Bar will change its classification of social media activity for the Fiscal Year 2026 *Keller* Dues Reduction, which will encompass the posts at issue.

In addition to activities funded by voluntary dues, Plaintiff objects to activities that are not funded by dues at all, including advertisements for member benefits (AC ¶¶ 149–54) and marketing resources that are offered *for sale* on the State Bar website (AC ¶¶ 155–56). The member benefits that Plaintiff objects to are paid classified advertisements on the State Bar website.[7] Similarly, the marketing resources Plaintiff complains of are plainly materials that are for sale on the State Bar's Marketplace webpage. (AC ¶ 155 n.48.)

Because none of these activities are funded by mandatory dues, they cannot be the basis for Plaintiff's freedom of speech claims. *See Omnicare*, 575 U.S. at 194; *accord Enger*, 812 F.3d at 568–70.[8]

---

[7] *See* https://marketplace.wisbar.org/FAQs?section=classifiedsupport (listing prices for placing classified advertisements on State Bar website).

[8] Also worth noting is the State Bar's practice of broadly defining the category of non-germane expenditures that must be funded by voluntary dues to include "*all* direct lobbying activity on policy

**D. The alleged activities of the State Bar that are funded by mandatory dues are nevertheless germane from the face of the AC.**

The remaining State Bar activities at issue in the AC that were funded at least in part by mandatory dues and are timely raised are nonetheless germane on the face of the AC. To determine whether activities are germane and thus fundable with mandatory dues, the Court asks "whether the [ ] expenditures are *necessarily or reasonably incurred* for the purpose of regulating the legal profession or improving the quality of the legal services available to the people of the State." *Keller*, 496 U.S. at 14 (citations omitted). In other words, the "reviewing court [must] consider whether [the] expenditures . . . are reasonably related to the [two] constitutionally relevant purposes of [the bar]." *Kingstad*, 622 F.3d at 716. "[T]he State Bar is not required to prove that its expenditures were actually successful in accomplishing the stated purpose, or that they served only that purpose, or that [they were] a particularly wise use of the State Bar's funds." *Id.* at 719. In conducting such an inquiry, "[t]he political or ideological nature of the [State Bar's] speech," if any, is simply one "factor[ ]" for the Court to consider. *Kingstad*, 622 F.3d at 716. Applying this standard here, all five remaining activities are easily germane.

**1. Diversity programs**

Plaintiff devotes significant time to arguing that a number of State Bar programs aimed at diversifying the legal profession are not germane to its constitutional purposes because those programs "discriminate against attorneys based on unlawful classifications, thereby violating

---

matters before the Wisconsin State Legislature or the United States Congress," even when such activities would otherwise be germane under *Keller*. State Bar of Wisconsin, *Maintaining Your Membership*, *supra*. Further, the State Bar often rounds the value of the *Keller* Dues Reduction up from a "strict calculation," thus providing even more assurance that dissenting members' First Amendment rights are protected. *E.g.*, *Keller* Dues Reduction Notice from Fiscal Year 2024, Dkt. 1-1 at 30.

attorneys' rights secured by the Equal Protection Clause of the Fourteenth Amendment" (AC ¶ 52) and "advocate[] for a race-centric worldview" (AC ¶ 84). Plaintiff specifically challenges the germaneness of the State Bar's Leadership Development Summit (AC ¶ 27); Leadership Academy (AC ¶ 39); Ready.Set.Practice Lawyer Mentoring Program (AC ¶ 48); Diversity, Equity, and Inclusion Plan Committee (AC ¶ 107); Diversity Counsel Program (AC ¶ 119), and DEI Hackathon Pitch Contest (AC ¶ 125) (the "Diversity Programs"). Plaintiff alleges that each of the Diversity Programs illegally discriminates against lawyers based on their immutable characteristics, advancing this claim by relying on inapplicable case law and quoting State Bar documents out of context.

As an initial matter, the Supreme Court's decision in *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ("*SFFA*"), on which plaintiff's rely for this claim (AC ¶ 7) does not apply to the State Bar or its activities. In *SFFA*, the Supreme Court was addressing race-based college admission programs at Harvard University and the University of North Carolina. The plaintiffs' claim in *SFFA* was that by using a raced-based program, other persons of different races were adversely affected through the limitation of admission slots, creating a violation of the 14th Amendment's Equal Protection Clause.[9] The Court's analysis was a continuation of the development of the law with respect to affirmative action programs in the university admission context. *SFFA* was the culmination of more than 50 years of jurisprudence, with the Court's most recent review of the issue prior to *SFFA* coming in *Grutter v. Bollinger*, 539 U.S. 306 (2003), upholding the University of Michigan Law School's use of a race-conscious decision-making program, recognizing that "student body diversity is a

---

[9] Among those members of the SFFA were Asian-Americans, who noted that the race-based benefits afforded to Black applicants adversely affected their applications by limiting the number of slots that Asian-Americans might fill.

compelling state interest that can justify the use of race in university admissions," *Grutter,* 539 U.S. at 325, but recognizing that there are limits: the use of such a program may neither create illegitimate stereotypes based on race, nor discriminate against those racial groups that are not the beneficiaries of the race-based preference.

As should be obvious, the State Bar is not a university, and the programs of which Plaintiff complains are not admission-based programs to attend a university. More importantly, as explained below, *nothing* in any of the complained of programs is "race-based," and, Plaintiff's mischaracterization of the advertisements and comments about the programs on the State Bar's website does not make them so.

Plaintiff mischaracterizes the diversity programs at issue by selectively quoting from State Bar websites and publications. For example, when discussing the nomination form for the Leadership Development Summit, Plaintiff alleges: "The nomination form asks only two questions, one of which is the following: 'This event is designed to attract a variety of legal professionals with diverse … ethnic[] [and] gender … backgrounds. Tell us what is unique, special, distinctive [,] and/or impressive about your nominee." (AC ¶ 33.) The full text of the quoted question actually states: "This event is designed to attract a variety of legal professionals with diverse geographic, ethnic, gender, political and practice backgrounds. Tell us what is unique, special, distinctive and/or impressive about your nominee." (Dkt. 44-1 at 8.) Similarly, Plaintiff misquotes the application for the Leadership Academy to create the impression that applicants are selected based on race or gender: He alleges: "The application form for the program begins with the following question: 'Please provide information about yourself for the Selection Committee to consider. … Factors to incorporate in your comments below may

include, but are not limited to, your race, ethnicity and national origin, … [and] gender …'" (AC ¶ 43.) The quoted portion of the application actually reads:

> The State Bar of Wisconsin is committed to having a broad range of experiences and perspectives in each Leadership Academy class. Please provide information about yourself for the Selection Committee to consider. For example, you may want to provide information about how you would add a unique perspective if selected. Factors to incorporate in your comments below may include, but are not limited to, your race, ethnicity and national origin, religion, sexual preference, gender, foreign language or travel, family situation, military service, athletic or academic interests, and any honors or awards you have received.

(Dkt. 44-1 at 9.)

Plaintiff misquotes and mischaracterizes these documents to create the impression that selection for the Leadership Development Summit and Leadership Academy is based on race, gender, or other immutable characteristics, to the benefit of certain groups over others. When read in full, however, these application questions clearly show that characteristics such as race, ethnicity, and gender are but a few suggested factors among many that can be presented to display the candidate's unique perspectives and experiences. Setting aside these misrepresentations, Plaintiff fails to plausibly allege that an application or nomination for any of the Diversity Programs has been accepted or denied based on immutable characteristics. Indeed, with respect to the Ready.Set.Practice mentoring program, Plaintiff's only objections seem to be that applicants are asked to state "how you have been affected by diversity; contributed to diversity; and/or hope to contribute to diversity and inclusion in the future" and are permitted to request a mentor of the same race or gender. (AC ¶¶ 50–51.) He does not plausibly allege that access to the mentoring program is limited based on any immutable characteristics. Similarly, Plaintiff's objections to the Diversity, Equity, and Inclusion Plan Committee; Diversity Counsel Program; and DEI Hackathon Pitch Contest are based solely on his disapproval of what he perceives to be a "race-centric worldview" rather than any plausible allegation of discrimination.

24

Programs similar to the Diversity Programs have already been found to be germane by the Fifth Circuit in two recent cases. In *McDonald v. Longley*, the Fifth Circuit held that

> the [Texas] Bar's various diversity initiatives through [Office of Minority Affairs], though highly ideologically charged, are germane to the purposes identified in *Keller*. … [D]espite the controversial and ideological nature of those diversity initiatives, they are germane … They are aimed at "creating a fair and equal legal profession for minority, women, and LGBT attorneys," which is a form of regulating the legal profession. And the Bar contends that those initiatives "help to build and maintain the public's trust in the legal profession and the judicial process as a whole," which is an improvement in the quality of legal services.

4 F.4th 229, 249 (5th Cir. 2021). The court further stated that "[t]he germaneness test does not require that there be unanimity on the Bar's position on what best regulates the legal profession—that is typically for the Bar to decide." *Id.* The Texas Bar diversity initiatives at issue in *McDonald* included: Texas Minority Counsel Program, LeadershipSBOT ("An initiative designed to increase diverse leadership participation within the legal community and the State Bar of Texas."), and the Bar Leaders Conference Diversity Summit. *McDonald v. Longley*, Case No. 1:19-cv-00219-LY, Dkt. 6-7 (W.D. Tex. Filed Mar. 25, 2019). In *Boudreaux v. La. State Bar Ass'n*, the Fifth Circuit reiterated its holding in *McDonald*, emphasizing that programs "tied to the diversity of lawyers" were germane to the constitutional purposes of an integrated bar. 86 F.4th 620, 636 (5th Cir. 2023). Notably, *Boudreaux* was decided after *Students for Fair Admissions*, and the result with respect to bar diversity programs remained the same.

In light of the above, Plaintiff's claims with respect to the Diversity Programs, which are nearly identical to the diversity programs approved of in *McDonald*, must fail because the Diversity Programs are germane to regulating the legal profession and improving the quality of legal services.

### 2. Wisconsin Lawyer Articles

Setting aside all *Wisconsin Lawyer* content identified in the AC that is untimely or funded by voluntary dues, Plaintiff is left with only one *Wisconsin Lawyer* article on which to base his claim: a March 10, 2021 article entitled *20/20 Hindsight: 20 Legal Tech Trends*. (AC ¶ 138 n.32.) The over-5,000 word article discusses developments in legal technology in 2020. (*See id.*) Nonetheless, Plaintiff cherry-picks a single sentence in which the author, a legal blogger not affiliated with the State Bar, expresses his opinion that "the legal profession, through its lack of diversity, has been complicit in perpetuating racial injustice and inequality." (*Id.*) This single sentence cannot render the entirety of the State Bar unconstitutional.

As an initial matter, the Court need not assess the germaneness of the *Wisconsin Lawyer* magazine at this level of granularity. As the District of Utah noted in evaluating a challenge to articles published in the *Utah Bar Journal*, whether a single article, out of all of the State Bar activities Plaintiff has challenged, is germane is not dispositive. *Pomeroy*, 2024 WL 1810229, at *12. Similarly, in *McDonald*, the Fifth Circuit took a holistic approach to assessing challenges to the content of the *Texas Bar Journal*, focusing on the germaneness of the publication as a whole rather than on individual articles. *McDonald*, 4 F.4th at 252. Plaintiff here does not challenge the germaneness of the *Wisconsin Lawyer* as a whole, but rather cherry-picks a few articles over a span of several years, most of which are not actionable. Plaintiff's challenge to a single sentence of a single article does not require the Court to examine the constitutional validity of Wisconsin's integrated bar as a whole. Moreover, every issue of *Wisconsin Lawyer* bears a disclaimer clarifying that the State Bar does not endorse the opinions expressed therein, reading: "[s]tatements or expressions of opinion here are those of the authors and not necessarily those of

the State Bar or editors." (*See, e.g., Wisconsin Lawyer*, Mar. 2021, at 2, Exhibit A.)[10] Multiple courts have held that such disclaimers weigh against analyzing the germaneness of individual bar journal articles as part of a freedom of speech or freedom of association analysis because the disclaimer makes it less likely that opinions expressed in individual articles would be associated with a dissenting State Bar member. *McDonald*, 4 F.4th at 252; *Pomeroy*, 2024 WL 1810229, at *12.

Even if the Court decides to assess the germaneness of individual articles, the *20/20 Hindsight* article is unquestionably germane to improving legal services in Wisconsin. The article discusses technological developments that bear directly on how lawyers conduct their practice and serve their clients. Plaintiff does not allege otherwise, and the single sentence he objects to (clearly the opinion of the author which cannot reasonably be attributed to the State Bar as a whole) does not alter the overall character of the article. The *20/20 Hindsight* article, and *Wisconsin Lawyer* as a whole, are germane.

### 3.      Statements Regarding Racial and Social Justice

As stated in Part IV.A, *supra*, Plaintiff's claims relating to the statements and X posts by the State Bar discussing issues of racial and social justice are time-barred. Even if Plaintiff's claims relating to those activities were timely, they fail because those activities are germane to the constitutional purposes of the State Bar. The statement in WisBar News by then-President Jill Kastner entitled *Change Does Not Happen When We Are Comfortable or Complacent* discusses "racial disparities in our legal system" and "rebuild[ing] the public's trust and confidence in the rule of law while at the same time work[ing] to ensure that all Wisconsin residents have access to

---

[10] Given Plaintiff's numerous citations to *Wisconsin Lawyer* articles throughout the AC, the Court may properly consider the disclaimer language, which appears in every issue of *Wisconsin Lawyer*.

a fair and impartial system of justice." (AC ¶ 130, n. 28.) Improving access to justice, increasing public trust in the legal system, and promoting a fair and impartial legal system are all germane to regulating the legal profession and improving the quality of legal services. *McDonald*, 4 F.4th at 249–50; *Kingstad*, 622 F.3d at 720; *Crowe v. Oregon State Bar*, Case No. 3:18-cv-02139-JR, 2023 WL 1991529, at *5 (D. Or. Feb. 14, 2023). The same is true of the InsideTrack article entitled *Racial Equity of Black Americans: It's Time to Step Up | A Statement*, which discusses the State Bar's efforts to "combat racial injustice and disparities, advance equal justice, and promote diversity and inclusion" in the justice system. (AC ¶¶ 133, 135, n. 30.) X posts addressing "systemic racism and implicit bias that is ingrained [sic] our legal system" (AC ¶ 131, n. 29) and "inviting lawyers to tell us what this moment in racial, social, and justice reform means to them" (AC ¶ 140, n. 33) are similarly germane to promoting a fair and impartial legal system. *McDonald*, 4 F.4th at 249–50; *Crowe*, 2023 WL 1991529, at *5.

### 4. Wisconsin Lawyer Assistance Program

The State Bar's Wisconsin Lawyer Assistance Program ("WisLAP"), which provides mental health and substance abuse counseling to the Wisconsin legal community, was previously found to be germane by the Seventh Circuit in *Thiel v. State Bar of Wisconsin*. 94 F.3d 399, 405 (7th Cir. 1996) (overruled, in part, on other grounds); *see also Thiel*, 94 F.3d at 406 (Ripple, J., concurring) ("all of the activities of which the plaintiffs complain fit quite comfortably within the category of nonideological, nonpolitical activities that are germane to the regulation of the legal profession or the improvement of the quality of legal services").[11] Plaintiff's challenge to the

---

[11] The Seventh Circuit in *Thiel* addressed WisLAP under its previous name, "Lawyers Concerned for Lawyers."

germaneness of WisLAP programming is therefore contrary to controlling precedent and fails as a matter of law.

## V. THE STATE BAR'S DUES REDUCTION PROCEDURES HAVE BEEN APPROVED BY MULTIPLE COURTS.

The State Bar's *Keller* Dues Reduction procedures have already been reviewed and found to be constitutional by multiple courts. The Seventh Circuit in *Crosetto* held that the State Bar's *Keller* Dues Reduction procedures are constitutional, both facially and as applied in that case. 12 F.3d at 1405. Similarly, in *File*, the Seventh Circuit held that by "provid[ing] for an optional annual dues deduction for activities that are not germane to the purpose identified in *Keller*," the State Bar "follow's *Keller* precisely." *File*, 33 F.4th at 391. Thus, Plaintiff's challenge to the constitutional adequacy of the State Bar's *Keller* Dues Reduction procedures is foreclosed by controlling precedent.

<u>**CONCLUSION**</u>

For the reasons stated above, Plaintiff's AC must be dismissed in its entirety, with prejudice.

Dated this 31st day of May, 2024.

FOLEY & LARDNER LLP

*/s/ Roberta F. Howell*
Roberta F. Howell, WI Bar No. 1000275
Daniel A. Kaplan, WI Bar No. 1018122
Andrew C. Gresik, WI Bar No. 1104650
150 East Gilman Street, Suite 5000
Madison, WI 53703-1482
608.258.4273 (RFH)
608.258.4231 (DAK)
608.258.4235 (ACG)
608.258.4258 Facsimile
rhowell@foley.com
dkaplan@foley.com
agresik@foley.com

*Attorneys for Defendants*

30

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, the foregoing document was

electronically filed with the Clerk of Court using the CM/ECF system and was served on the

following by email:

Richard Esenberg (WI Bar No. 1005622)
Daniel P. Lennington (WI Bar No. 1088694)
Skylar Croy (WI Bar No. 1117831)
330 East Kilbourn Avenue, Suite 725
Milwaukee, WI 53202
Telephone: (414) 727-9455
Facsimile: (414) 727-6385
Rick@will-law.org
Dan@will-law.org
Skylar@will-law.org

*Attorneys for Plaintiff*


Dated: May 31, 2024                          */s/ Andrew C. Gresik*
                                             Andrew C. Gresik