# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANIEL SUHR,

    Plaintiff,

    v.                                                Case No. 23-CV-1697-SCD

RYAN BILLINGS, JANE DOE, DEAN R. DIETRICH,
MARTINA RAE GAST, DEANNE M. KOLL,
MELODIE WISEMAN, and LARRY MARTIN,
*in their official capacities as officers of the State Bar of Wisconsin*,

    Defendants.

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Daniel Suhr, a Wisconsin lawyer, claims the State Bar of Wisconsin is violating his constitutional rights to freedom of speech and freedom of association. After the parties reached a partial settlement, Suhr filed an amended complaint. ECF No. 44. The Bar filed a motion to dismiss Suhr's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 45. Suhr filed a response to the motion, ECF No. 52, and the Bar submitted a reply brief, ECF No. 53. For the reasons below, I will grant the motion with respect to the Bar's two affirmative (yet limited) defenses under the Eleventh Amendment; I will deny the motion in all other respects.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, "a complaint

must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint satisfies this pleading standard when its "'factual allegations . . . raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To analyze the sufficiency of a complaint [courts] must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

## DISCUSSION

"Section 1983 of Title 42 authorizes a federal cause of action against any person who, acting under color of state law, deprives another of rights secured by federal law or the United States Constitution." *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999). Here, Suhr alleges that the Bar, acting under color of state law, is violating his rights to free speech and freedom of association, secured by the First Amendment to the U.S. Constitution. *See* ECF No. 44 ¶¶ 10, 11, 177, 180.

Like many states, Wisconsin requires lawyers to become members of the State Bar and to pay annual dues. Attorneys have challenged the constitutionality of mandatory membership and dues for decades. *See, e.g.*, *Lathrop v. Donohue*, 367 U.S. 820 (1961) (rejecting a Wisconsin lawyer's claim that he could not constitutionally be compelled to join and financially support a state bar association that engaged in legislative advocacy). In *Keller v. State Bar of California*, 496 U.S. 1, 13 (1990), the Supreme Court found "the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services." But the Court clarified that the First

2

Amendment permits the State Bar to fund its activities with mandatory dues only so long as those activities are "germane" to constitutionally permissible justifications. *Keller*, 496 U.S. at 14. Here, Suhr challenges the Bar's classification and procedural handling of certain activities, as well as whether the Bar can legally compel his membership if it engages in non-germane activities. Before evaluating the sufficiency of those allegations, I will address the affirmative defenses asserted by the Bar.

I.  **Affirmative Defenses**

The Bar's motion to dismiss asserts several affirmative defenses based on the Eleventh Amendment, the statute of limitations, and ripeness. ECF No. 46 at 9–10, 15–19. Suhr rightly contends that affirmative defenses are not properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and should have been brought in a motion for judgment on the pleadings under Rule 12(c). ECF No. 52 at 10 (citing *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012)). After all, the Seventh Circuit has "held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)" (which lists affirmative defenses). *Richards*, 696 F.3d at 637.

Nevertheless, "[s]ince a motion which otherwise conforms to the requirements is not defeated by the failure of proper denomination," I may construe the motion to do substantial justice. *See Chrysler Corp. v. Lakeshore Com. Fin. Corp.*, 66 F.R.D. 607, 608 (E.D. Wis. 1975); *see also Burnett v. Country Mut. Ins. Co.*, No. 12-CV-0019-SLC, 2012 WL 12995656, at *2 (W.D. Wis. Apr. 3, 2012) ("[W]hen construing a motion, the court may determine its nature by its substance or the relief it seeks as opposed to simply looking at its title or caption."). In this case, I will construe the motion as one for judgment on the pleadings with respect to the Bar's

two affirmative (yet limited) defenses under the Eleventh Amendment because Suhr effectively concedes the merits of those defenses. *See* ECF No. 52 at 6 n.1, 11 n.4.

First, the Bar argues that there is no basis for Suhr's claims to be brought against three of the named defendants. Although the doctrine of *Ex Parte Young*, 209 U.S. 123, 159–60 (1908), allows a plaintiff to sue the individual state officials who are responsible for carrying out the duties that are allegedly unconstitutional, the Bar maintains that Suhr's claims against the President-Elect (Jane Doe), the Immediate Past-President (Dietrich), and the Chairperson of the Board of Governors (Wiseman) must be dismissed because these offices are not responsible for the actions that Suhr challenges. *See* ECF No. 46 at 16–17. That is, none of these officials has any duties related to the collection of mandatory membership dues and the maintenance of the mandatory membership rolls. *See id.* Suhr does not oppose this part of the Bar's motion. ECF No. 52 at 6 n.1. Second, the Bar argues that the Eleventh Amendment bars Suhr's claim for money damages. ECF No. 46 at 17. Suhr does not dispute this either, acknowledging instead that his claim would be limited to declaratory and injunctive relief under *Thiel v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010). ECF No. 52 at 11 n.4. Accordingly, I will grant the Bar's motion with respect to these two affirmative defenses. Defendants Doe, Dietrich, and Wiseman (in their official capacities as President-Elect, Immediate Past-President, and Chairperson of the Bar Board of Governors) shall be dismissed from this action. Furthermore, Suhr's prayer for relief shall be limited to declaratory and injunctive relief.

The Bar also raises a defense under the statute of limitations, arguing that any challenges to the Bar's activities occurring before December 19, 2020 (three years prior to the filing date) are untimely. Those challenged activities include:

- *Change Does Not Happen When We Are Comfortable or Complacent*, AC ¶ 130, n.28; dated June 2, 2020;

- X post regarding Black Lives Matter, AC ¶ 131, n.29; dated June 17, 2020;

- *Racial Equity of Black Americans: It's Time to Step Up | A Statement*, AC ¶¶ 133, 135, n.30; dated June 17, 2020; and,

- X post regarding racial, social, and justice reform, AC ¶ 140, n.33 dated August 15, 2020.

Suhr contends that these claims are not time-barred because the Bar's actions are ongoing (given that the statements are publicly visible and have not been taken down). ECF No. 52 at 11–14. The continuing violation doctrine is unavailing, however, because the ongoing nature of the Bar's activity is not necessary to make the conduct actionable. *See Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008) (observing that "continuing violations" are only those which are not actionable until the cumulative effect of a pattern of conduct reaches a non-trivial level).

The Bar further argues that any challenges to the Bar's activities that occurred after the Bar's most recent available audit are not yet ripe. ECF No. 46 at 23–26. It asserts that an individual's free speech rights are not injured by the mere occurrence of the activity itself but by the Bar's requirement that the individual *pay* for that activity. *See id.* The determination as to which activities are subject to a refund is not made until after the fact, and the Bar has not yet made that determination with respect to several articles and posts now challenged:

- *Support the Center for Black Excellence and Culture*, InsideTrack, published Feb. 21, 2024; AC ¶ 113, n.22;

- Attorneys for Black Excellence Initiative, YouTube, posted Feb. 19, 2024; AC ¶ 117, n.23;

- November 30, 2023 X post; AC ¶ 158, n.51;

- November 28, 2023 X post; AC ¶ 158, n.52;

5

- November 27, 2023 X post; AC ¶ 158, n.53;
- November 24, 2023 X post; AC ¶ 158, n.54;
- November 22, 2023 X post; AC ¶ 158, n.55;
- October 31, 2023 X post; AC ¶ 158, n.56;
- November 3, 2023 X post; AC ¶ 158, n.57;
- December 6, 2023 "liked" X post; AC ¶ 160, n.58;
- December 6, 2023 "liked" X post; AC ¶ 161, n.58;
- December 9, 2023 X post; AC ¶ 156, n.49;
- *Do You Have a Multicultural Law Practice?*, Elder Law and Special Needs Blog, published August 15, 2023, AC ¶ 142, n.34;
- *Qualified Immunity: A Dubious Doctrine and a 21st Century Wisconsin Solution*, Wisconsin Lawyer, published November 9, 2023; AC ¶ 145, n.35;
- *How to Measure Your Digital Marketing & Set Some Goals*, Wisconsin Lawyer, published November 9, 2023; AC ¶ 145, n.37; and,
- *Get Your Name Out There: Showcase Your Legal Knowledge in Wisconsin Newspapers*, InsideTrack, published December 6, 2023; AC ¶ 157, n.50.

As Suhr points out, the Bar cannot have it both ways. If the freedom of speech challenge is not actionable until the Bar issues its *Keller* dues reduction notice, then the claim does not begin to accrue under the statute of limitations as soon as the activity occurs. It would accrue later. That would mean many or all of the pre-December 19, 2020 acts the plaintiff cites could still be actionable. The Bar does not specify precisely when its *Keller* notice becomes available to members, or even whether it necessarily must serve as the first opportunity for members to review the Bar's activity (if, for example, there is a lag between auditing the most recently completed fiscal year and sending the notice out for the next fiscal year). Moreover, it is possible that the accrual timelines could differ depending on whether Suhr's claim is based on free speech or association. In short, because the record needs further

6

development on these points, I will reject the Bar's defenses based on the statute of limitations and ripeness at this time.

## II. Freedom of Speech

The Bar tackles Suhr's freedom of speech claim in two parts. First, it contends that *Keller* forecloses challenges to the Bar's activities funded by voluntary dues (or not funded by dues at all). ECF No. 46 at 26–27. Second, it asserts that the challenged activities funded by mandatory dues are germane to its mission, and that this is clear from the face of the amended complaint. *Id.* at 28–36. This bifurcated analysis is consistent with *Keller*'s holding that a mandatory bar may not fund its activities with mandatory dues unless those activities are germane to the bar association's constitutional justifications. *See Keller*, 496 U.S. at 14.

### A. Procedural Safeguards for Nonchargeable[1] Activities

In light of *Keller*, the Wisconsin Supreme Court's Rules provide for an optional reduction of dues whereby state bar members may "withhold" from their annual dues "the pro rata portion of dues budgeted for activities that cannot be supported by compulsory dues." SCR 10.03(5)(b)2. The Seventh Circuit has confirmed that this practice facially complies with *Keller*. *See File v. Martin*, 33 F.4th 385, 391 & n.1 (7th Cir. 2022) (noting that the plaintiff had not "challenged the adequacy of the dues-deduction procedures"), cert. denied sub nom. *File v. Hickey*, 143 S. Ct. 745 (2023). Accordingly, the Bar argues that Suhr cannot sustain a freedom of speech challenge to activities that are not funded by mandatory dues (those activities being financed instead by voluntary dues or other revenue). ECF No. 46 at 26–28. I cannot agree with the Bar at this stage of the proceedings.

---

[1] The Bar refers to activities that are within the purposes of its organization as "chargeable" and activities that are not germane to those purposes as "nonchargeable." *See* SCR 10.02(2) (setting forth the purposes of the Wisconsin State Bar).

7

Suhr raises a factual dispute as to whether the activities in question are truly funded independently from mandatory dues. *See* ECF No. 52 at 23. The Bar asks me to take judicial notice of multiple recent *Keller* dues reduction notices, but the parties have not provided the notices or pointed the court to a publicly-available copy.[2] The Bar also cites SCR 10.05(4)(e)(4) as evidence that the litigation section diversity scholarship and Elder Law and Specials Needs blog are not funded by mandatory dues—because they are activities of "sections" of the Bar and SCR 10.05(4)(e)(4) provides that a section must charge "annual dues at least equal to the cost of its legislative program so that the cost need not be borne by section nonmembers." ECF No. 46 at 26. But the fact that a rule prescribes a certain practice does not necessarily mean the practice is followed, and Suhr has not had an opportunity to pursue discovery on this point.

It's true that the Seventh Circuit has looked favorably on the Bar's procedures. In *Crosetto v. State Bar of Wisconsin*, the Seventh Circuit determined:

> The Wisconsin rules follow the law of *Keller* and *Hudson* in the following ways: (1) SCR 10.03(5)(b)(2) requires that the Bar provide written notice to all members before the beginning of each fiscal year, describing those activities the Bar has determined are chargeable and those which are non-chargeable, informing members as to the cost of those activities and describing how those amounts were calculated; (2) SCR 10.03(5)(b)(3)–(5) sets up a procedure whereby those who contend that the calculation is incorrect may challenge the calculation and have their challenge promptly determined by an impartial arbitrator; (3) State Bar Bylaws Article 1, Section 5(b) provides that a member demanding arbitration need not pay any dues until October 31 or 15 days following the arbitrator's decision, whichever is later.

12 F.3d 1396, 1405 (7th Cir. 1993).

---

[2] Only the fiscal year 2024–25 notice appears to be publicly available on the Bar's website. https://www.wisbar.org/formembers/membershipandbenefits/Documents/Keller%20Dues%20Insert.pdf

8

While the Seventh Circuit has approved of the Bar's written rules, Suhr asserts an as-applied challenge to the Bar's *practices*, which have not been conclusively established in this action. In fact, the fiscal year 2024–25 *Keller* dues reduction notice on the Bar's website describes only those activities that the Bar determined to be nonchargeable—despite SCR 10.03(5)(b)(2) requiring notice of chargeable activities as well. Given these outstanding factual issues, it would be premature to dismiss Suhr's free speech claim.

### B. Germaneness of Challenged Chargeable Activities

The Bar argues that it's possible to determine from the face of the complaint that certain chargeable activities are germane to the Bar's constitutionally permissible purposes. ECF No. 46 at 28–36. As the Bar recognizes, a member bringing a germaneness challenge has the burden to point to the expenditures that he alleges are not germane. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 877–78 (1998). At that point, the Bar must show the court how those expenditures are in fact "germane to regulating the legal profession and improving the quality of legal services." *Keller*, 496 U.S. at 13–14; *Kingstad*, 622 F.3d at 709. The Bar claims that a member cannot "file a generally phrased complaint, then sit back and require the [Bar] to prove the germaneness of its expenditures without a clue as to which of its thousands of expenditures the objectors oppose." ECF No. 46 at 22 (quoting *Air Line Pilots*, 523 U.S. at 878).

But Suhr has done precisely what the Bar asks of him. The general theme of his complaint is that the challenged activities are not "reasonably related" either to improving the quality of legal services or regulating the legal profession. *See* ECF No. 44; *Keller*, 496 U.S. at 14 (requiring expenditures be "necessarily or reasonably incurred for" these limited purposes to be germane). The Bar appears to have no difficulty parsing out which expenditures Suhr is

9

challenging, as it has methodically explained its position as to their germaneness. *See* ECF No. 46 at 28–36. The activities may well be germane, as the Bar suggests, but that analysis is premature. At this stage, Suhr has adequately stated his claim.

### III. Freedom of Association

Suhr also argues that the First Amendment prohibits the state from compelling him to associate with an organization whose ideas he rejects. That is, even if the Bar allows him to avoid *paying* for such activities, he is nevertheless compelled to be a member of an organization he disagrees with in some material respects. The Bar argues that Suhr's freedom-of-association claim fails as a matter of law under the Seventh Circuit's decision in *File v. Martin*. *See* 33 F.4th at 391. In *File,* a Wisconsin lawyer argued that the mandatory bar "is facially incompatible with the First Amendment" and sought an injunction against the Bar's membership and dues requirements. *Id.* at 388. The Seventh Circuit made short shrift of that argument, however, finding that "File's claim is squarely foreclosed by the Supreme Court's decision in *Keller,* which held that the compelled association required by an integrated bar is 'justified by the State's interest in regulating the legal profession and improving the quality of legal services.'" *Id.* at 391 (quoting *Keller,* 496 U.S. at 13).

On first pass, one might agree with the Bar that *File v. Martin* forecloses the plaintiff's freedom-of-association challenge. After all, the court indicated that the "compelled association required by an integrated bar" is acceptable under *Keller*. *See id.* But that statement must be placed in proper context, which requires an examination of *Keller* itself. In *Keller,* the petitioners complained that the California State Bar's "use of their membership dues to finance certain ideological or political activities to which they were opposed violated their

rights under the First Amendment." 496 U.S. at 4. The Supreme Court concluded that the state bar could not compel members to fund non-germane activities of an ideological nature:

> Here the compelled association and integrated bar are justified by the State's interest in regulating the legal profession and improving the quality of legal services. The State Bar may therefore constitutionally fund activities germane to those goals out of the mandatory dues of all members. It may not, however, in such manner fund activities of an ideological nature which fall outside of those areas of activity.

*Id.* at 13–14.

*Keller,* in short, was a case about mandatory dues being used to support speech rather than a case challenging compelled membership (association) in the state bar. In fact, in its final paragraph, the *Keller* decision explicitly left open the question as to whether the petitioners could "be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified under the principles of *Lathrop* and *Abood*. The California courts did not address this claim, and we decline to do so in the first instance." 496 U.S. at 17.

Fast-forward to 2022 and the *File v. Martin* case. There, echoing *Keller,* the Seventh Circuit rejected the plaintiff's facial challenge to the mandatory state bar. *See File*, 33 F.4th at 391. But the court's swift rejection of that challenge should not be read as sweepingly as the Bar proposes. Because the court explicitly (and exclusively) relied on *Keller,* and because *Keller* clearly left the freedom-of-association question open, the Seventh Circuit's statement that "File's claim is squarely foreclosed" meant only that *File's claim* is foreclosed, not that *all* claims based on freedom of association were doomed to fail. Instead, as recognized in *Keller*, there is an open question as to whether Suhr may "be compelled to associate with an organization that engages in political or ideological activities beyond those for which mandatory financial support is justified." 496 U.S. at 17. As the Tenth Circuit concluded,

11

"Neither *Lathrop* nor *Keller* addressed a broad freedom of association challenge to mandatory bar membership where at least some of a state bar's actions might not be germane to regulating the legal profession and improving the quality of legal services in the state." *Schell v. Chief Just. & Justs. of Oklahoma Supreme Ct.,* 11 F.4th 1178, 1194 (10th Cir. 2021). That is the challenge Suhr now presses.

Because the Bar concedes it engages in some level of non-germane activity, and because the bounds of a freedom of association claim remain an open question in this circuit, the motion to dismiss will be denied.[3]

## CONCLUSION

For all the foregoing reasons, the court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion to dismiss the plaintiff's amended complaint, ECF No. 45. Defendants Doe, Dietrich, and Wiseman (in their official capacities as President-Elect, Immediate Past-President, and Chairperson of the Bar Board of Governors) shall be **DISMISSED** from this action. Furthermore, Suhr's prayer for relief shall be limited to declaratory and injunctive relief (and not money damages). The clerk of court shall arrange a scheduling conference to address further proceedings.

---

[3] The Fifth Circuit has adopted a no-tolerance policy for non-germane activity by compulsory bar associations. *See McDonald v. Longley*, 4 F.4th 229, 246 (5th Cir. 2021) (concluding that compelled membership in a bar association that engages in *any* non-germane activities violates constitutional right to freedom of association). Other courts have suggested a more lenient approach. *See, e.g.*, *Pomeroy v. Utah State Bar,* No. 2:21-CV-00219-TC-JCB, 2024 WL 1810229, at *7 (D. Utah Apr. 25, 2024) (indicating that "the court will assess 1) the amount of non-germane conduct; 2) the substance of that conduct, including whether the conduct is political or ideological; and 3) the prominence of that conduct, including whether a disclaimer would prevent a reasonable person from attributing the conduct to the beliefs of an objecting member."); *Crowe v. Oregon State Bar,* No. 3:18-CV-2139-JR, 2023 WL 1991529, at *5 (D. Or. Feb. 14, 2023) ("The Supreme Court in *Lathrop* expressly relied on the fact that only some degree of the integrated bar's activity was potentially improper, and not the 'bulk' or 'major' portion of the bar's activity.").

**SO ORDERED** this 19th day of August, 2024.

_____
STEPHEN C. DRIES
United States Magistrate Judge